



## OPINION

No. 04-10-00192-CV

**E-Z MART STORES, INC.**, and FaEllen Yates, as Executrix and Personal Representative of
the Estate of James Earl Yates,
Appellants

v.

**RONALD HOLLAND'S A-PLUS TRANSMISSION & AUTOMOTIVE, INC.** and Holland
R. Inc.,
Appellees

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2002-CI-07251
Honorable Gloria Saldaña, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:      Karen Angelini, Justice
              Steven C. Hilbig, Justice
              Marialyn Barnard, Justice

Delivered and Filed:  August 3, 2011

REVERSED AND REMANDED

      Appellees Ronald Holland's A-Plus Transmission & Automotive, Inc. and Holland R.

Inc. ("the Hollands") sued E-Z Mart Stores, Inc., FaEllen Yates, as Executrix and Personal

Representative of the Estate of James Earl Yates ("E-Z Mart"), and Williams Express, Inc. d/b/a

Mapco Petroleum, Inc. ("Mapco") for negligence, trespass, and nuisance. The Hollands alleged

gasoline leaked from a petroleum storage system housed beneath the surface of a convenience

store owned by E-Z Mart, and previously owned by Yates, and migrated to the Hollands' property. According to the Hollands, the gas migration caused an explosion when a cell phone company drilled to install a cell phone tower. A jury awarded the Hollands over $550,019.53 on their negligence and nuisance claims.

On appeal, E-Z Mart contends: (1) the evidence is legally and factually insufficient to prove a causal connection between the Hollands' alleged injuries and E-Z Mart's 1992 dispenser line leak; (2) the trial court erred by excluding the evidence related to Mapco; (3) the jury charge contains reversible error; (4) the damages findings should be set aside because recovery is barred under Texas law and the findings are unsupported by legally and factually sufficient evidence; (5) cumulative error requires remand; and (6) all findings against appellant James Yates are unsupported by legally and factually sufficient evidence. We reverse and remand.

## BACKGROUND

Throughout the 1980s, Mapco owned the property adjacent to the Hollands and ran the convenience store located on the property. In 1988, a leak in a petroleum storage tank was discovered by the Texas Natural Resources Conservation Commission ("the TNRCC"), now the Texas Commission on Environmental Quality ("the TCEQ"). Because of contamination, the TNRCC required Mapco to install ten monitoring wells.

In September 1989, Mapco sold the property to Yates, and Yates immediately leased it to E-Z Mart, which thereafter operated the convenience store. In 1992, another gas leak was discovered and reported to the TNRCC. Six years later, E-Z Mart demolished the existing convenience store, built a new facility, and replaced the fuel tank system. During this renovation, E-Z Mart found contamination in excess of the TNRCC standards. After E-Z Mart

completed testing and remedial measures, the TNRCC issued a standard letter stating E-Z Mart complied with the remedial measures and no further corrective action was necessary.

During this time, the Hollands contracted with Trinity Wireless Cell Company ("Trinity") to build a cell phone tower on the Hollands' property, for which Trinity would make lease payments. In 2001, when Trinity began drilling, there was an explosion. After the explosion, Trinity pulled out of the lease agreement because an environmental testing firm, hired to inspect the Hollands' property, concluded the level of Benzene, a gasoline additive, was eight times above the TNRCC allowed standard. The firm opined that because the Hollands' land had never been used to store gas, the gas must have migrated from E-Z Mart's gas station. The Hollands then sued E-Z Mart, Yates, and Mapco for trespass, nuisance, and negligence.

In the first suit, Mapco and E-Z Mart filed no-evidence motions for summary judgment. The trial court granted the motions and on appeal, this court affirmed the judgment as to Mapco "because the Hollands failed to produce more than a scintilla of evidence of the causation element of their claim . . . ." *Ronald Holland's A-Plus Transmission & Auto., Inc. v. E-Z Mart Stores, Inc.*, 184 S.W.3d 749, 760 (Tex. App.—San Antonio 2005, no pet.). We reversed and remanded the trial court's judgment as to E-Z Mart and Yates because the Hollands produced more than a scintilla of evidence to support their claims against E-Z Mart and Yates. *Id.*

The case then proceeded to a jury trial without Mapco as a party. Nevertheless, E-Z Mart was allowed to present evidence as to Mapco's alleged responsibility for the gas leaks. The jury deadlocked and a mistrial was declared.

Before the second trial began, the trial court excluded all evidence relating to Mapco and its alleged responsibility for the gas leaks. The trial court then took judicial notice that Mapco was not responsible for the Hollands' damages, and twice instructed the jury that Mapco was not

responsible for any portion of the Hollands' damages. After deliberation, the jury rejected the trespass theory, but found for the Hollands on their nuisance and negligence theories, awarding the Hollands over $550,000 in damages. E-Z Mart then perfected this appeal.

## EVIDENCE OF CAUSATION

In its first issue, E-Z Mart contends the Hollands did not present legally sufficient evidence of causation. Specifically, E-Z Mart argues the Hollands did not prove a causal link between the contamination of the Hollands' property and E-Z Mart's 1992 leak. In other words, E-Z Mart claims the Hollands did not meet their burden of causation by proving it was E-Z Mart's gasoline that migrated onto the Hollands' property. E-Z Mart asserts Mapco and the leaks that occurred before E-Z Mart owned the property were the cause of the Hollands' damages.

### *Standard of Review*

Because legal sufficiency is a rendition issue, we must address it before addressing issues that would require a remand. *See Bradleys' Elec., Inc. v. Cigna Lloyds Ins. Co.*, 995 S.W.2d 675, 677 (Tex. 1999) (citing TEX. R. APP. P. 44.3)). Legal sufficiency is reviewed in the light most favorable to the party for whom the verdict was rendered. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We must consider whether the evidence presented at trial enabled a reasonable and fair minded jury to render the same verdict. *See id.* at 827. We therefore "credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.*

A legal sufficiency challenge will be sustained if the record shows: "(a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove

a vital fact is no more than a mere scintilla; (d) the evidence establishes conclusively the opposite of the vital fact." *Id.* at 810 (quoting Robert W. Calvert, *"No Evidence" & "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362–63 (1960)). If the record contains any probative evidence in support of the jury's findings, we will uphold the jury's verdict. *See Exxon Corp. v. Garza*, 981 S.W.2d 415, 420 (Tex. App.—San Antonio 1998, pet. denied).

In conducting our sufficiency review, we are mindful that the jury, as the fact finder, is the sole judge of the credibility of the witnesses, the weight to be given to their testimony, the weight to be given to the evidence, and we will not displace the jury's determination even if we would find otherwise. *See City of Keller*, 168 S.W.3d at 819. It is also within the jury's discretion to resolve inconsistencies and conflicts in the evidence, and we must accept the jury's resolution of these inconsistencies and conflicts. *Barrajas v. VIA Metro. Transit Auth.*, 945 S.W.2d 207, 209 (Tex. App.—San Antonio 1997, no pet.).

To prevail on a claim for negligence or nuisance, a plaintiff must establish, among other things, that the defendant's actions proximately caused the alleged injury. *See Doe v. Boys Club of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995) (negligence); *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 269-70 (Tex. 2004) (nuisance). As for proximate cause, the components are cause in fact and foreseeability. *Doe*, 907 S.W.2d at 477. The test for cause in fact is whether the harm would have occurred but for the act or omission causing the injury. *Excel Corp. v. Apodaca*, 81 S.W.3d 817, 820 (Tex. 2002). Cause in fact may be proven by either direct or circumstantial evidence. *Id.* The test for foreseeability is whether "a person of ordinary intelligence would have anticipated the danger his or her negligence creates." *Id.*

*Analysis*

E-Z Mart argues the Hollands failed to show that but for E-Z Mart's leak, they would not have suffered an injury because the Hollands' expert, Joseph Moulder ("Moulder"), did not rule out other potential causes of the explosion. *See Martinez v. City of San Antonio* for this proposition. 40 S.W.3d 587 (Tex. App.—San Antonio 2001, pet. denied). Specifically, E-Z Mart contends the failure to exclude Mapco's leaks as a possible cause of the contamination renders the Hollands' evidence insufficient to prove causation. E-Z Mart also contends that even if the Hollands had ruled out other potential causes, the Hollands' experts' testimony was conclusory, speculative, and therefore, constituted no evidence.

An expert's testimony constitutes no evidence when the expert fails to rule out alternative sources of contamination. *Id.* at 595. "[I]f there are other plausible causes of the injury or condition that could be negated, the plaintiff must offer evidence excluding those causes with reasonable certainty." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 720 (Tex. 1997).

We agree an expert must present some evidence ruling out other potential causes of contamination; however, the trial court took judicial notice of the fact that Mapco was not a cause of the contamination. Once a court takes judicial notice, "the court shall instruct the jury to accept as conclusive any fact judicially noticed." TEX. R. EVID. 201. It would be illogical to hold that the Hollands did not present sufficient evidence to exclude Mapco as a possible source of contamination after the trial court took judicial notice, and instructed the jury, that Mapco was not responsible for the contamination. Therefore, we reject E-Z Mart's assertion that the causation evidence was insufficient because the Hollands failed to exclude Mapco as a cause of the gas leak.

As for E-Z Mart's second argument, E-Z Mart claims that even if the Hollands were excused from disproving Mapco's liability, Moulder's testimony was conclusory, speculative, and therefore, constituted no evidence. E-Z Mart directs us to evidence showing: (1) E-Z Mart had a number of systems in place to alert it to a leak; (2) samples taken after the leak registered a minimal amount of volatile organic compounds found in gasoline; (3) testimony that E-Z Mart's records do not indicate any loss of product; (4) the State designated E-Z Mart's leak as insignificant; (5) the monitoring wells did not show an increase of contamination at or near the time of the leak; (6) in 1999, the State closed the file on E-Z Mart's 1992 leak; and (7) that if one of the monitoring wells showed a substantial level of contaminant, the State would have refused to close the file. Based on this evidence, E-Z Mart contends Moulder's opinion has no basis and is purely speculative. We disagree.

Moulder testified that in the report Drash engineers prepared after the explosion, methyl tertiary butyl ether ("MTBE") was found in samples taken from the explosion site. He testified MTBE is a gasoline additive that is not found in nature. In the report, it was also mentioned that gasoline odor was present at the explosion site. Therefore, Moulder opined that gasoline caused the explosion because of the presence of MTBE and decomposing organic material that can produce methane gas was not found at the explosion site.

Given the exclusion of the evidence regarding Mapco, we hold Moulder's testimony that the explosion was caused by gasoline is some evidence E-Z Mart caused the explosion. Although Moulder's testimony was contradicted by evidence presented by E-Z Mart, we hold it was testimony the jurors could credit, and it was within the jury's province to resolve any inconsistencies.

The Hollands also presented testimony from Peter Schram ("Schram"). After the explosion, he created an isopleth study. An isopleth study basically maps the groundwater gradient, and can be used to track, in the event of a leak, which way the leaked material will flow as well as the level of contamination. Using data from the map, Schram opined that the contamination plume migrated from E-Z Mart's facility onto the Hollands' property and caused the explosion. In contrast, one of E-Z Mart's experts testified he would not accept the map but also admitted he would need more information on which to render an opinion. Again, although Schram's testimony was contradicted by E-Z Mart, we hold Schram's testimony constituted some evidence that E-Z Mart's gasoline migrated onto the Hollands' property because it was within the jury's province to resolve any inconsistencies.

In sum, it was within the jury's purview to weigh the evidence, and we must not disturb their verdict unless we find there was no probative evidence that E-Z Mart's leak led to the explosion on the Hollands' property. Therefore, we hold (1) the evidence was legally sufficient to show that the gasoline migrated from E-Z Mart's facility onto the Hollands' property, thus causing the explosion, and (2) although the Hollands' experts were contradicted by evidence presented by E-Z Mart, their testimony was neither speculative nor conclusive. E-Z Mart's first issue is overruled.

## DAMAGES

In its fourth issue, E-Z Mart contends the damages findings should be set aside because the Hollands' damages are barred by law, or in the alternative, the evidence is legally insufficient to support the findings. As with causation, this is a potential rendition point, and therefore we must address it before addressing any remand points.

The jury awarded damages for: (1) property damages; (2) damage to credit and reputation sustained in the past; (3) reasonable and necessary costs incurred to date to test for, and to determine, the presence and extent of the underground contamination; (4) the loss of cell-phone tower rental income sustained in the past; and (5) the loss of cell-phone tower rental income that, in reasonable probability will be sustained in the future. The jury did not award damages for: (1) damage to credit reputation that, in reasonable probability, will be sustained in the future; (2) interference with the use and enjoyment of the land; or (3) costs sustained by the Holland Companies in lost time of employees and staff in assessing the extent of the contamination and in deciding what to do about it. The total amount of damages awarded was $555,019.53.

*Analysis*

First, E-Z Mart argues the Hollands' damages are barred by law. This court has held that because administrative regulations dictate the appropriate cleanup standards, "'unreasonable levels' of contaminants on the land would be levels which exceeded state action levels." *Taco Cabana, Inc. v. Exxon Corp.*, 5 S.W.3d 773, 780 (Tex. App.—San Antonio 1999, pet. denied). If the contaminant is "harmful to human health and safety or the environment," it rises to state action level. 30 TEX. ADMIN. CODE § 334.504(b), (c). If the contamination rises to state action levels, corrective measures must be taken by the owner or operator of the underground storage tank. *Id.* § 334.504(d).

In *Ronald Holland's A-Plus Transmission*, we held the Hollands were not required "to show actionable levels of contaminants on the E-Z Mart site to recover damage to their property," and as long as "there is evidence of contamination in excess of state-action levels on the Hollands' land," damages are recoverable. *Ronald Holland's A-Plus Transmission*, 184 S.W.3d at 756. This court also held there was evidence of contamination in excess of state

action levels on the Hollands' land. *Id.* at 756-77. E-Z Mart argues the evidence presented at the trial was much different from that presented at the hearing prior to the 2005 opinion.

At trial, a report prepared by Drash Consulting Engineers, Inc. was admitted into evidence. The report listed Benzene as a volatile organic compound, and indicated the concentration of Benzene in the groundwater beneath the Hollands' property was 44.2 ug/L. The report also noted the concentration of Total Petroleum Hydrocarbons ("TPH") in the Hollands' soil was 200 mg/Kg. Moulder testified the state action level of Benzene in groundwater is 5 ug/L and the state action level for TPH is 100 mg/Kg. The evidence showed the levels of Benzene and TPH found on the Hollands' property exceeded the state action level. Therefore, damages are not barred by law because there was evidence of contamination in excess of state-action levels on the Hollands' land. *See id.*

E-Z Mart also contends the damages findings should be set aside because the evidence was legally insufficient to show the Hollands suffered damages. Because this is a legal sufficiency review, we will use the same standard of review set out above.

As for the $220,000 award for property damages, there was evidence that (1) the value of the property dropped $254,000 due to the contamination, and (2) the cost to restore the property to its original state was $425,000. We hold this was legally sufficient evidence to support the award for property damages.

E-Z Mart contends the $40,000 finding for past damages to the Hollands' credit reputation should be set aside. Mr. and Mrs. Holland both testified they were no longer able to secure a loan for their business. Specifically, a $50,000 loan for expansion of the business was denied. E-Z Mart argues the Hollands' testimony is only speculative. The Texas Supreme Court has held that proof of a lower credit rating is only proof of nominal damages, but proof of a

denial of a loan is proof of actual, compensable damages. *St. Paul Surplus Lines Ins. Co., Inc. v. Dal-Worth Tank Co., Inc.*, 974 S.W.2d 51, 53 (Tex. 1998). Inability to obtain a loan and proof of the amount of the loan is proof of actual damages. *Id.* Here, the Hollands both testified that they were denied a $50,000 loan. Therefore, this damages finding was supported by legally sufficient evidence.

E-Z Mart contends the finding of $81,008 for "costs incurred up to date to test for, and to determine, the presence and extent of the underground contamination" should be set aside because Texas law does not allow for this sort of recovery and because it is duplicative. E-Z Mart asserts this finding is an attempt to reimburse the Hollands for expert fees acquired during preparation for trial; these sorts of fees are not recoverable. *See Richards v. Mena*, 907 S.W.2d 566, 571 (Tex. App.—Corpus Christi 1995, writ dism'd); *Adams v. Stotts*, 667 S.W.2d 798, 801 (Tex. App.—Dallas 1983, no writ). The jury heard testimony that all litigation costs were removed from the billing. Therefore, this finding does not violate Texas law because there was testimony these damages did not include litigation costs. As for the argument that these fees are duplicative of the property damage award (the cost of remediation), the cost of testing the soil for contamination is a recoverable damage under Texas law. *See Z.A.O., Inc. v. Yarbrough Drive Ctr. Joint Venture*, 50 S.W.3d 531, 548 (Tex. App.—El Paso 2001, no pet.). The jury heard testimony that the Hollands hired Extra Environmental to perform environmental testing. Therefore, there was legally sufficient evidence to support this award.

Finally, E-Z Mart contends the $75,375 in damages for lost cell-phone tower rental income should be disregarded because there was insufficient evidence that gasoline vapors, as opposed to other methane gas, caused the explosion and that this award was duplicative. The jury heard evidence there was no decomposing organic material, a possible source of methane

gas, and that the workers on the site did not smell methane even though it is a very pungent smell. The jury also heard that MTBE, a gasoline contaminate, was found at the explosion site. This was sufficient evidence to prove gasoline caused the explosion. As for the argument that the loss of rental income is duplicative of the "loss of the use and enjoyment of the property" question, the Hollands were not awarded any damages under the use and enjoyment damages question. Also, the argument that the loss of rental income is tied in with "property damage" is not persuasive. As stated above, the property damage question encompassed the cost to restore the property and the decline in property value, not for the loss of rental income. Therefore, we hold this damages finding was supported by legally sufficient evidence and was not duplicative.

We hold the Hollands were not barred by law from recovering damages. We also hold that the evidence was legally sufficient to support the damage award. Accordingly, we overrule E-Z Mart's fourth issue.

### EXCLUDED MAPCO EVIDENCE

In its second issue, E-Z Mart argues the exclusion of the Mapco evidence was reversible error. E-Z Mart claims this evidence mainly consists of: (1) three prior Mapco gasoline leaks; (2) proof of "extensive contamination" caused by the leaks; and (3) expert testimony concluding the alleged contamination of the Hollands' property was caused by Mapco's leaks.

The Hollands argue the evidence shows only one leak during the time Mapco owned the property. The Hollands also argue that under the doctrines of res judicata, stare decisis, claim preclusion, waiver, judicial estoppel, and collateral estoppel, E-Z Mart cannot complain about the exclusion of the Mapco evidence because this court found there was no evidence to support the claims that Mapco caused the contamination. *See Ronald Holland's A-Plus Transmission & Auto.*, 184 S.W.3d at 760.

### *Standard of Review*

We review the admission or exclusion of evidence under an abuse of discretion standard. *See In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005). A trial court abuses its discretion if it acts without reference to any guiding rules and principles or if the ruling is arbitrary and unreasonable. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex. 1995). If there is a legitimate basis in the record to support the ruling, we must uphold it. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

On appeal, the complaining party must not only show the trial court committed error in its ruling, but also that the error probably caused the rendition of an improper judgment. *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009). It is not necessary for the complaining party to prove that but for the exclusion of the evidence, there would have been a different outcome, but only that "the exclusion of evidence probably resulted in the rendition of an improper judgment." *Id.* (quoting *McCraw v. Maris*, 828 S.W.2d 756, 758 (Tex. 1992)). "[T]he exclusion or admission is likely harmless if the evidence was cumulative, or the rest of the evidence was so one-sided that the error likely made no difference in the judgment." *Id.* Error is harmful if the evidence is crucial to a key issue. *Id.*

### *Analysis*

E-Z Mart contends the Mapco evidence was necessary to negate E-Z Mart's alleged causation of the Hollands' injuries. That is, it was necessary to show E-Z Mart's leak was not the source of contamination of the Hollands' property but Mapco's leak was the source. The most pertinent Mapco evidence excluded by the trial court was: (1) evidence of Mapco's oil tank leak in 1988; (2) evidence of two subsequent gasoline tank leaks in January and July of 1989; (3) an opinion that soil excavation did not remove all hydrocarbon contamination immediately

adjacent to and beneath the convenience store during the time Mapco owned the property; (4) subsurface contamination after Mapco's oil tank leak; (5) the State's designation of Mapco as the responsible party in cleaning up after the leak and that E-Z Mart was not required to monitor the contamination from prior leaks; and (6) E-Z Mart's leak occurred in approximately the same location as Mapco's leak.

We first address the Hollands' affirmative defenses of res judicata, collateral estoppel, and judicial estoppel. Res judicata, or claim preclusion, "prevents litigation of a claim or cause of action that has been finally adjudicated in a prior suit, as well as related matters that, with the use of diligence, could have been litigated in that suit." *Logan v. McDaniel*, 21 S.W.3d 683, 687 (Tex. App.—Austin 2000, pet, denied) (citing *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992)). Collateral estoppel, or issue preclusion, "prevents relitigation of particular issues already resolved in a prior suit." *Id.* Res judicata and collateral estoppel include final dispositions of parties and because Mapco is not a party to the current suit, neither applies. As for judicial estoppel, it prevents a party from taking a contrary position in a subsequent proceeding from the pending proceeding. *Long v. Knox*, 291 S.W.2d 292, 295 (Tex. 1956). E-Z Mart did not take a contrary position in the underlying proceeding as it did in the previous proceedings. Here, judicial estoppel is not relevant to our inquiry.

Because the Hollands' affirmative defenses do not apply, we next address whether the evidence was erroneously excluded. In *Ronald Holland's A-Plus Transmission & Auto.*, this Court held there was more than a scintilla of evidence on causation to support the Hollands' claims against E-Z Mart. 184 S.W.3d at 757. As for Mapco, we held the Hollands failed to present more than a scintilla of evidence of the causation element of their claim against Mapco. *Id.* at 759.

As argued by E-Z Mart, we hold the summary judgment affirmance as to Mapco is not indicative of Mapco's responsibility. We did not hold that Mapco was not responsible, only that the Hollands failed to attach sufficient summary judgment evidence in order to raise a fact issue as to Mapco's responsibility. *See id.* at 760.

To withstand a motion for summary judgment, the nonmovant must produce more than a scintilla of probative evidence to raise a genuine issue of material fact. TEX. R. CIV. P. 166a(i); *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). The Hollands' failure to produce enough evidence to withstand a motion for summary judgment is not conclusive proof that Mapco was not liable for the contamination and explosion. Rather, it means only that at the time of the summary judgment proceeding, the Hollands failed in their burden. It has no bearing on E-Z Mart's ability to produce evidence as to Mapco's responsibility. Accordingly, we hold the trial court abused its discretion in excluding the evidence related to Mapco.

Because we hold the evidence was improperly excluded, we must now determine whether the excluded evidence probably caused the rendition of an improper judgment. *See Cent. Expressway*, 302 S.W.3d at 870. E-Z Mart contends the excluded evidence was "case-turning" in that the excluded evidence was relevant to the causation issue and to E-Z Mart's defense that it did not proximately cause the contamination. This ruling also prevented E-Z Mart from countering the Hollands' claim that it was E-Z Mart's gasoline that migrated onto their property because E-Z Mart was not allowed to present evidence of leaks occurring when Mapco owned the property. We hold the inability to offer evidence negating causation is a key issue, and therefore, agree with E-Z Mart and hold the erroneously excluded evidence probably caused the rendition of an improper judgment. *See id.* Therefore, we sustain E-Z Mart's second issue.

## CONCLUSION

Based on the foregoing, we overrule E-Z Mart's sufficiency issue but sustain E-Z Mart's issue concerning the Mapco evidence. Given our disposition of E-Z Mart's second issue, we need not address its remaining issues. Accordingly, we reverse and remand this matter to the trial court for further proceedings in accordance with our opinion.


Marialyn Barnard, Justice