

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00290-CV

**In the Interest of D.M.O.**

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2016-PA-00385
Honorable Stephani A. Walsh, Judge Presiding

Opinion by:     Irene Rios, Justice
Dissenting Opinion by: Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
                Patricia O. Alvarez, Justice
                Irene Rios, Justice

Delivered and Filed:  March 21, 2018

REVERSED AND REMANDED

Appellees Mother and Step-Father filed suit to terminate Appellant Father's parental rights to his child, D.M.O., and for Step-Father to adopt D.M.O. The trial court signed a single order terminating Father's parental rights, granting the adoption, and changing D.M.O.'s name. Father appeals the trial court's order, contending, among other issues, that the trial court erred by failing to appoint an attorney ad litem or amicus attorney for the child. We reverse the trial court's order terminating Father's parental rights and granting Step-Father's adoption and remand the cause to the trial court for a new trial.

## BACKGROUND

Father and Mother were never married, but were in a relationship at the time of D.M.O.'s birth. Father and Mother separated when D.M.O. was one-and-a half years old. At that time, Mother and Father were both serving in the military and stationed near Abilene, Texas. Mother later married Step-Father in 2009. After the marriage, D.M.O. and Appellees moved to South Carolina. It appears Appellees then moved from South Carolina to San Antonio, Texas sometime in 2015. The record indicates that around the same time, Father moved to Georgia.

D.M.O. is currently eleven years old and has been living with Mother and Step-Father since they married. On February 22, 2016, Appellees filed suit to terminate Father's parental rights and for Step-Father to adopt D.M.O. Father answered, entering a general denial.

At the non-jury trial on April 3, 2017, Father appeared without an attorney and participated in the trial pro se.[1] Father and Mother were the only witnesses to testify before the trial court. No other witness testified at the trial. At the conclusion of the trial, the trial court signed a single order terminating Father's parental rights and granting Step-Father's adoption of D.M.O. In the order, the trial court made the following findings:

(1) Father failed to support D.M.O. in accordance with his ability during a period of one year ending within six months of the date of the filing of the petition. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(F) (West Supp. 2016);

(2) Termination of Father's parental rights is in D.M.O.'s best interest. *See id.* § 161.001(b)(2); and

---

[1] Father contends on appeal the trial court erred by failing to admonish him regarding the perils of proceeding pro se at trial. In doing so, Father invites this court to join our sister court in holding that a trial court must admonish a parent before allowing him to proceed pro se in a trial to terminate his parental rights. *See In re C.L.S.*, 403 S.W.3d 15, 21 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) ("[W]e hold that in parental termination cases, before a parent is permitted to represent himself pro se, the record should show that the trial judge has informed him that there are technical rules of evidence and procedure, and that he will not be granted any special consideration solely because he has asserted his right of self-representation.") (internal quotation marks omitted). Because we find the issue of the trial court's failure to appoint an amicus or ad litem attorney dispositive, we need not address this issue at this time.

(3) "[Mother] . . . has no interest adverse to [D.M.O.] and would adequately represent the interest of the child. No attorney ad litem or amicus attorney was necessary, and none was appointed."

On appeal, Father contends (1) the evidence was legally and factually insufficient to support the trial court's finding that termination of his parental rights was in D.M.O.'s best interest; (2) the trial court erred by failing to admonish Father regarding the perils of self-representation; (3) the trial court abandoned its role as a neutral arbiter; (4) the trial court erred by failing to appoint an attorney ad litem or an amicus attorney to represent the child; (5) the trial court erred by considering an adoption evaluation that failed to comply with statutory requirements; and (6) the trial court did not allow Father to present a defensive case.

### FAILURE TO APPOINT AN ATTORNEY AD LITEM OR AMICUS ATTORNEY

Father contends the trial court erred by failing to appoint an attorney ad litem or amicus attorney for the child. *See* TEX. FAM. CODE ANN. § 107.021(a-1) (West 2014) (requiring that in private termination suits, either an attorney ad litem or amicus attorney must be appointed to represent the child, unless the trial court finds the interests of the child will be represented adequately by a party to the suit).[2] Father argues that under the circumstances of this case, the trial court could not have properly found Mother adequately represented the interests of the child.

### Preservation of Error

Father did not object before the trial court regarding its failure to appoint an attorney ad litem or amicus attorney for the child. Our rules of appellate procedure require that, for error to be preserved for appellate review, the complaining party must have made an objection to the trial court and the trial court must have either ruled on the objection or refused to issue a ruling, and

---

[2] Prior versions of this statute required the appointment of either an attorney ad litem or a guardian ad litem for the child unless the court found the interests of the child would be represented adequately by a party to the suit and were not adverse to that party. *See* Acts 1995, 74th Leg., ch. 20, § 1; Acts 1975, 64th Leg., p. 1258, ch. 476, § 14.

the complaining party objected to the refusal. *See* TEX. R. APP. P. 33.1. However, several courts have concluded that a trial court's failure to appoint an attorney ad litem or amicus attorney[3] for a child in a private termination case may be raised for the first time on appeal. *See In re K.M.M.*, 326 S.W.3d 714, 715 (Tex. App.—Amarillo 2010, no pet.); *Turner v. Lutz*, 654 S.W.2d 57, 58 (Tex. App.—Austin 1983, no pet.); *Arnold v. Caillier*, 628 S.W.2d 468, 469 (Tex. App.— Beaumont 1981, no pet.); *see also In re D.W.*, No. 04-05-00927-CV, 2006 WL 2263907, at *1 (Tex. App.—San Antonio Aug. 9, 2006, no pet.) (Lopez, C.J., dissenting) (dissenting on other grounds, but recognizing that failure to appoint an ad litem for a child may be raised for the first time on appeal); 40A TEX. JUR. 3d Family Law § 1897 (noting that, despite preservation of error rules, a trial court's failure to comply with TEX. FAM. CODE. § 107.021(a-1) may be raised for the first time on appeal).

"Involuntary termination of parental rights involves fundamental constitutional rights and divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re L.J.N.*, 329 S.W.3d 667, 671 (Tex. App.—Corpus Christi 2010, no pet.) (citing *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)). As a result, we must strictly scrutinize involuntary termination proceedings in favor of the parent. *Id.* Given the constitutional interests at stake in termination proceedings, the important role of amicus and ad litem attorneys in termination proceedings, and the mandatory nature of Section 107.021(a-1), we conclude a complaining party may raise a trial court's failure to appoint an attorney ad litem or amicus attorney when required by Section 107.021(a-1) for the first time on appeal. *See In re K.M.M.*, 326 S.W.3d at 715; *Turner*, 654 S.W.2d at 58.

---

[3] Cases discussing earlier versions of Section 107.021(a-1) refer to the trial court's failure to appoint either an attorney ad litem or guardian ad litem for the child.

**Applicable Law**

The Texas Family Code requires that in a private termination suit, the trial court must appoint an amicus attorney or an attorney ad litem to represent the interests of the child "unless the court finds that the interests of the child will be represented adequately by a party to the suit whose interests are not in conflict with the child's interests." TEX. FAM. CODE ANN. § 107.021(a-1). In other words, the statute requires the trial court make an affirmative finding that the record supports the child's interests can be adequately represented by one of the parents and are not in conflict with that parent. *Id.* Although the statute permits a trial court to proceed without the appointment of an ad litem or amicus attorney if it makes the requisite finding, our sister courts have "recognized that where parents are adversaries in a suit to terminate one parent's rights, the trial court can seldom find that one party adequately represents the interests of the children involved or that their interests are not adverse." *In re K.M.M.*, 326 S.W.3d at 715; *see also Chapman v. Chapman*, 852 S.W.2d 101, 102 (Tex. App.—Waco 1993, no writ); *Barfield v. White*, 647 S.W.2d 407, 409 (Tex. App.—Austin 1983, no writ). We review a trial court's finding that the interests of the child will be represented adequately by a party to the suit for abuse of discretion. *In re C.A.P.*, No. 04-12-00553-CV, 2013 WL 749825, at *2 (Tex. App.—San Antonio Feb. 27, 2013, pet denied) (mem. op.).

Several courts have determined that where one parent sued another parent to terminate his or her parental rights to their child, the trial court could not properly find that the child's interests were adequately represented by a party to the suit. *See Chapman*, 852 S.W.2d at 102; *Barfield*, 647 S.W.2d at 409; *Turner*, 654 S.W.2d at 60; *In re R.N.G.*, No. 11-02-00084-CV, 2002 WL 32344622, at *5 (Tex. App.—Eastland Dec. 12, 2002, no pet.) (mem. op., not designated for publication).

*Barfield v. White* and *In re R.N.G.* are both factually similar to the present case. *See Barfield*, 647 S.W.2d at 408; *In re R.N.G.*, 2002 WL 32344622, at *2. In *Barfield*, a mother sought to terminate the parental rights of the child's father so that her husband, the child's step-father, could adopt the child. *Barfield*, 647 S.W.2d at 408. The trial court declined to appoint an ad litem to represent the child's interests, finding that the child's interests were adequately represented by the parties. *Id.* at 409. The Austin Court of Appeals reversed and remanded the cause, concluding that because contested private termination suits where one parent is trying to terminate the other parent's parental rights "by their very nature require the father and mother to litigate their personal interests," the trial court could not have found the child's interests were adequately represented by one of the parties. *Id.* Similarly, in *In re R.N.G.*, a father and step-mother sought to terminate the mother's parental rights so the step-mother could adopt the children. *In re R.N.G.*, 2002 WL 32344622, at *2. The trial court declined to appoint an ad litem for the children, finding the interests of the children were adequately represented by the father and step-mother. *Id.* at *4. Citing *Barfield*, the Eastland Court of Appeals concluded that "[b]ecause [father] and [step-mother] had a personal interest in th[e] case, the trial court should have appointed an ad litem to represent the interests of the children." *Id.*

In several cases, when the trial court failed to make the necessary finding under Section 107.021(a-1) or its predecessors, our sister courts have considered the circumstances of the case to determine whether the trial court could find the interests of the child were adequately represented by a litigating parent. In *Chapman*, a mother sued the father to terminate his parental rights to their child, alleging failure to support. *Chapman*, 852 S.W.2d at 101. Without addressing the statutory requirement to appoint an ad litem to protect the child's interests, the trial court terminated the father's parental rights. *Id.* The appellate court reversed, concluding that under the circumstances of the case, where each parent was advocating his or her own interests in a suit

where one parent sought to terminate the other parent's parental rights, the trial court could not have found the interests of the child were adequately represented by a party to the suit. *Id.* at 102. In so concluding, the court recognized, "[i]t would be a rare situation where the trial court could properly find that a[n] … ad litem is not needed when one parent is trying to terminate the other parent's parental rights." *Id. See also Nichols v. Nichols*, 803 S.W.2d 484, 486 (Tex. App.—El Paso 1991, no writ); *Turner*, 654 S.W.2d at 59 (explaining "even if this Court had the ability in this case to recognize an implied finding [that the children's interests were adequately represented by a party to the suit], the facts would not permit it" where "one parent was trying to terminate the other's parental rights, a situation which necessarily requires each parent to litigate their own interests"); *Arnold*, 628 S.W.2d at 470 (noting "father and mother . . . were busily litigating their personal interests . . . ; in the meanwhile, there was no one present whose primary obligation was to protect the child's rights" where the mother was seeking to remove the legal barrier to the adoption of the child by her husband). *Cf. Bevering v. Bevering ex rel. Bevering*, 401 S.W.3d 293, 298–300 (Tex. App.—San Antonio 2013, pet. denied) (distinguishing *Nichols*, *Barfield*, and *Arnold* from private termination suits where the termination was unopposed and the parent whose rights were terminated signed a voluntary relinquishment of parental rights to the child); *In re C.A.P.*, 2013 WL 749825, at *2 (concluding trial court did not err by failing to appoint an ad litem or amicus attorney for the child where father was convicted of sixteen counts of sexual assault and indecency with a child by contact); *In re R.J.C.*, No. 04-09-00106-CV, 2010 WL 816188, at *2 (Tex. App.—San Antonio Mar. 10, 2010, no pet.) (mem. op.) (concluding trial court did not err by declining to appoint an ad litem for the child and finding the mother adequately represented the interests of the child where the mother sought to terminate the father's parental rights in order to protect the child from the father, who had pleaded guilty to and was convicted of aggravated sexual

assault of the mother's other child, his six-year-old step-daughter, of which abuse caused the step-daughter to suffer serious injuries).

## Discussion

In this case, Father opposed the termination suit. The record shows Father entered a general denial, testified at trial he wished to maintain a relationship with the child, and brought documentary evidence to support his arguments. *Cf. Bevering*, 401 S.W.3d at 300. Moreover, there is no evidence Father engaged in violent or physically abusive behavior, has been incarcerated, or has otherwise engaged in conduct endangering the child. *Cf. In re C.A.P.*, 2013 WL 749825, at *2; *In re R.J.C.*, 2010 WL 816188, at *2. Mother sued to terminate Father's parental rights to remove the legal barrier to the adoption of the child by her husband, and the record indicates Mother was interested in "mak[ing] [her] family complete." *See Barfield*, 647 S.W.2d at 409 (noting that mother was interested in removing the legal barrier to the adoption of the child by her husband); *In re R.N.G.*, 2002 WL 32344622, at *2. This was a contested termination suit where Mother sought to terminate Father's parental rights to D.M.O. The *entire* appellate record contains a mere thirty-seven pages of testimony and fifty-six pages of Father's telephone records. The entire proceedings, including presentation of the pleadings, testimony, closing arguments by Mother's counsel and Father, and the trial court's ruling, were completed in less than an hour. Mother and Father were clearly adversaries in the suit to terminate Father's parental rights. *See Barfield*, 647 S.W.2d at 409 ("We think it would be a rare situation where the trial court can properly find that an attorney or guardian ad litem is not needed when one parent is trying to terminate the other parent's parental rights."); *see also Chapman*, 852 S.W.2d at 102. Like the Austin Court of Appeals explained in *Barfield*, when one parent is attempting to terminate the parental rights of another parent, the "very nature of the case require[s] the father and mother to litigate their personal interests." *Barfield*, 647 S.W.2d at 409. On this very limited record, without more, we conclude

the trial court could not reasonably find *either party* could "adequately represent" D.M.O.'s interests or that *either parent's* interests were not in conflict with D.M.O.'s interests. *See id.*; *cf. Bevering*, 401 S.W.3d at 300 (termination was uncontested); *In re C.A.P.*, 2013 WL 749825, at *2 (father convicted of sixteen counts of sexual assault and indecency with a child); *In re R.J.C.*, 2010 WL 816188, at *2 (father convicted of aggravated sexual assault of a child). Based on the record before us, we conclude the trial court abused its discretion by finding Mother could adequately represent D.M.O.'s interests and failing to appoint either an attorney ad litem or an amicus attorney to ensure that D.M.O.'s interests were adequately represented. *See* TEX. FAM. CODE ANN. § 107.021(a-1); *Chapman*, 852 S.W.2d at 102; *Turner*, 654 S.W.2d at 59; *Barfield*, 647 S.W.2d at 409; *Arnold*, 628 S.W.2d at 470; *In re R.N.G.*, 2002 WL 32344622, at *4.

An attorney ad litem or amicus attorney would have interviewed D.M.O. and the parties, elicited the child's expressed objectives, and investigated the facts of the case in the course of examining the *Holley* factors. *See* TEX. FAM. CODE ANN. § 107.003(a)(1); *see also Gaitan v. Blevins*, No. 04-95-00070-CV, 1996 WL 165529, at *3 (Tex. App.—San Antonio Apr. 10, 1996, no writ) (not designated for publication) (Because of the failure to appoint an ad litem in a private termination case, "the trial court . . . did not have the benefit of a[n] . . . ad litem to examine the *Holley* factors."). Termination cases may be reversed on appeal when the trial court fails to comply with Section 107.021(a-1) or its predecessors. *See Turner*, 654 S.W.2d at 59–60 (concluding the trial court's failure to comply with previous version of Section 107.021(a-1) was reversible error because "the termination of parental rights action[s] are of such a serious nature that the trial court's error cannot be treated any other way"); *see also Gaitan*, 1996 WL 165529, at *3. Due to the serious nature of parental termination proceedings and the important role of amicus and ad litem attorneys in assisting the trial court in making a best interest determination in contested termination suits, a trial court's failure to appoint an attorney ad litem or amicus attorney when

required to do so "is error that cannot be treated as harmless." *In re K.M.M.*, 326 S.W.3d at 716; *see also Chapman*, 852 S.W.2d at 102; *Turner*, 654 S.W.2d at 59–60; *Barfield*, 647 S.W.2d at 409; *Gaitan*, 1996 WL 165529, at \*3. Accordingly, the trial court's failure to appoint an attorney ad litem or amicus attorney for D.M.O. was reversible error.

## BEST INTEREST

Father contends the evidence is legally and factually insufficient to support the trial court's finding that termination was in the child's best interest. Although we have held the trial court erred by not appointing an attorney ad litem or amicus attorney for the child, we still must address whether the evidence is legally insufficient to support the trial court's best interest finding because it is a rendition issue. *E–Z Mart Stores, Inc. v. Ronald Holland's A–Plus Transmission & Auto., Inc.*, 358 S.W.3d 665, 670 (Tex. App.—San Antonio 2011, pet. denied) (noting legal sufficiency is a rendition issue).

The Texas Supreme Court has enumerated the following factors to assist courts in evaluating a child's best interest: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody of the child; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The foregoing factors are not exhaustive, and "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

In reviewing the legal sufficiency of the evidence to support the termination of parental rights, the court must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2003). "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id*. "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id*.

Because we are limiting our review to legal sufficiency of the evidence, the following analysis looks at the evidence in the light most favorable to the trial court's finding and disregards all evidence the trial court could have disbelieved or found to be incredible. *See id.*

Father testified that pursuant to a prior court order, he paid over $20,000 in child support over the course of three years. However, Father stopped paying child support in July 2014 when he received notice that the support suit against him was dismissed. Father explained he did not financially support D.M.O. from July 2014 to March 2016 because he was unsure of Mother's new San Antonio address. Father further testified that because he was unsure of Mother's new San Antonio address, he established and deposited money into a "529c" account for D.M.O. However, Mother testified that prior to February 22, 2016, the date suit was filed, she provided Father a mailing address to which Father could send money while Appellees set up their new mailbox after moving to San Antonio. In March 2016, after Mother provided Father her address, Father mailed D.M.O. a check for $1,100 along with a letter explaining the money was a gift. Father received that money for claiming D.M.O. as a dependent on his 2015 tax returns, although he was not D.M.O.'s custodial parent. Father testified that in December 2014, Mother called to ask Father to allow Step-Father to adopt D.M.O. Father explained that although he respected Step-Father's role

in D.M.O.'s life, he did not want Step-Father to adopt D.M.O. Father expressed a desire to be more involved in D.M.O.'s life, despite their geographical distance.[4]

Mother testified the last time Father saw D.M.O. was in November 2013, when Father and D.M.O. took a trip together to Cabo San Lucas, Mexico for Thanksgiving. Mother speculated that one of Father's relatives paid for the trip. Mother testified she was aware Father and D.M.O. had several telephone conversations since 2014. According to Mother, Father would call every other month, at best. Mother testified the last time Father and D.M.O. spoke was in either December 2015 or January 2016 when D.M.O. called Father to wish him well for the holidays. However, Mother also testified that around November 2015, D.M.O. told Father in a phone conversation that he no longer wanted to have a relationship with Father based on "broken promises and past hurts." Regarding D.M.O.'s reaction to his phone calls with Father, Mother testified:

> Sometimes [D.M.O. is] excited to hear from him. Sometimes he's reluctant to get on the phone. But after the phone calls, it's a depression that kind of comes over him. We have to go -- myself and my husband have to go and talk to [D.M.O.] and console him. He's usually crying. I'm usually having to ease his worries about [Father] possibly trying to take him away or just the continuation of lies and broken promises. And [D.M.O.] overall just feels neglected and abused. … He doesn't want to talk to him. He goes through crying episodes. And it usually takes about a few days before we can get him to come around.

Mother testified D.M.O. wanted Father's rights terminated and Step-Father to adopt him. Mother testified that in 2015 and 2016, Father never sent D.M.O. a birthday gift or Christmas gift. Mother testified she had not withheld D.M.O. from Father and that she tried to foster a relationship between Father and D.M.O.

Father introduced into evidence his monthly phone records showing both incoming and outgoing calls between September 2015 and December 2016, with the exception of four months. Father explained the phone records demonstrate he made numerous, unsuccessful attempts to call

---

[4] The record indicates Father and Mother had been living in different states for several years at the time of trial.

Mother's number to communicate with D.M.O. Father explained the records show a total of forty-two phone calls between Father's phone number and Mother's phone number. The records show between September 2015 and February 22, 2016, the date suit was filed, a total of fifteen phone calls, both incoming and outgoing, were completed between Father and Mother, including seven calls in November 2015 and on December 24, 25, and 31, 2015. The phone records further show that between February 2016 and December 2016 Father initiated a total of twenty-six phone calls to Mother's phone number. These calls include four outgoing calls by Father on D.M.O.'s birthday and two calls the day after D.M.O.'s birthday.

The foregoing is legally sufficient evidence to support the trial court's finding that termination of Father's parental rights was in the child's best interest.

## CONCLUSION

The trial court's order terminating Father's parental rights and granting the adoption is reversed, and the cause is remanded to the trial court for a new trial.

Irene Rios, Justice