

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-12-00434-CV

**SERENGETI RESORT, LLC** and Lori Hagee,
Appellants

v.

**ESPERANZA PROPERTIES, LP**, Esperanza Properties GP, Inc., and Louis Scott Felder,
Appellees

From the 216th Judicial District Court, Kendall County, Texas
Trial Court No. 10-094
Honorable N. Keith Williams, Judge Presiding

Opinion by:     Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Sandee Bryan Marion, Justice

Delivered and Filed: January 22, 2014

AFFIRMED IN PART; REVERSED IN PART

This appeal arises from the sale of land owned by Esperanza Properties, LP, a Texas limited partnership. The trial court entered two summary judgments before a jury trial was held to resolve the remaining claims. On appeal, Lori Hagee, one of Esperanza's limited partners, and Serengeti Resort, LLC, an entity owned by Hagee, contend the trial court erred in its summary judgment

rulings and in its award of attorneys' fees. Hagee and Serengeti also contend the jury charge contained numerous errors, and the evidence is insufficient to support certain jury findings.[1]

## BACKGROUND

The sale of the land by Esperanza occurred after its partners entered into a Compromise Settlement Agreement ("CSA") relating to the disposition of that land. Louis Scott Felder and Hagee were Esperanza's limited partners, and each owned a 49.5% interest in the partnership. A corporate entity, Esperanza Properties GP, Inc., was Esperanza's general partner, and it owned the remaining 1% interest in the partnership. Felder and Hagee each owned a 50% interest in Esperanza GP. Felder was the sole director and officer of Esperanza GP.

When Esperanza was formed, Felder and Hagee were married. When they divorced, they entered into an Agreement Incident to Divorce and a Plan of Exchange governing the disposition of four properties owned by Esperanza at that time. By the time a dispute arose precipitating the negotiation and execution of the CSA, the only tract of land Esperanza owned was a 395 acre tract of land. The underlying cause arises from the disposition of 287 acres of that tract and Hagee's obligation to purchase the remaining 108 acres.

## SUMMARY JUDGMENT RULINGS

Prior to the jury trial, the trial court entered two orders on competing motions for summary judgment. Pertinent to this appeal, in the first summary judgment order, the trial court concluded that the CSA "released the requirement under the Agreement Incident to Divorce to obtain Lori Hagee's written consent before selling the 287 acre tract as a matter of law." The trial court also concluded that the "Bank of America and Louis Scott Felder debt were legitimate partnership obligations as of the date of the execution of the Agreement Incident to Divorce and Plan of

---

[1] The only issue raised on appeal involving Serengeti is the issue pertaining to Esperanza's trespass claim; therefore, this opinion will refer only to Hagee in relation to the other issues.

Exchange and such debts were not released by the Compromise Settlement Agreement." In the second summary judgment order, the trial court concluded that Felder had the authority to sell the 287 acres. Hagee challenges each of these conclusions.

### A.     Standard of Review

We review a summary judgment *de novo*. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In reviewing the granting of a traditional summary judgment, we consider all the evidence in the light most favorable to the respondent, indulging all reasonable inferences in favor of the respondent, and determine whether the movant proved that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). "When both sides move for summary judgment and the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both sides and determine all questions presented." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). In such a case, "we render the judgment that the trial court should have rendered." *Id*.

### B.     Compromise Settlement Agreement Released Hagee's Consent Requirement

In her first issue, Hagee contends the trial court erred in concluding that the provision in the Agreement Incident to Divorce requiring her consent to the sale of Esperanza's 395 acre tract was released by the CSA. This issue is based on the trial court's interpretation of the CSA.

An unambiguous contract is construed as a matter of law. *Dynergy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009). A contract is unambiguous if it can be given a certain or definite meaning as a matter of law. *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 806 (Tex. 2012). A contract is not ambiguous simply because the parties advance conflicting interpretations. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). A contract is ambiguous only if the contract is subject to

more than one reasonable interpretation after applying the pertinent rules of contract construction. *El Paso Field Servs.*, 389 S.W.3d at 806.

With regard to the sale of Esperanza's property, the Agreement Incident to Divorce, which was executed on August 31, 2006, stated as follows:

> No property will be sold or conveyed from the holdings of Esperanza Properties, LP, without the individual written consent of [Felder] and [Hagee].

The CSA was subsequently executed to be effective June 1, 2008. In the CSA, Esperanza, Felder, and Hagee acknowledged that they had "settled, fully and finally, all of the claims which have been or which could have been asserted by Esperanza, Felder, and/or Hagee in the above-referenced AID [Agreement Incident to Divorce] and Plan [of Exchange] and agree to release each of the Parties from the obligations contained therein." Under the terms of the CSA, Hagee agreed to purchase 108 acres out of the 395 acre tract simultaneously with the sale of the remaining 287 acres. Hagee agreed to pay the same purchase price per acre as paid by the purchaser of the 287 acre tract. Any proceeds due to Hagee from the sale of the 287 acre tract were to be applied to the amounts owed by Hagee to Esperanza in connection with her purchase of the 108 acres. If the proceeds exceeded the purchase price, the excess would be released to Hagee; however, if the proceeds were less than the purchase price, Hagee agreed to pay the difference.

The CSA contained a broad mutual release. In pertinent part, each party released the other from all promises, obligations, and rights arising from, asserted, or assertable in connection with the Agreement Incident to Divorce and the Plan of Exchange. The parties extensively discuss the term "obligation" in their briefs; however, whether the consent required under the Agreement Incident to Divorce is considered to be a promise by the parties to obtain each other's consent, an obligation by Esperanza to obtain her consent, or Hagee's right to preclude a sale without her consent, all such promises, obligations, and rights were released by Hagee when she executed the

CSA. *See Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 459 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (holding indemnity provision requiring a party to indemnify the other for failed obligations included the failure to obtain consent to a lease assignment). Accordingly, the trial court properly granted summary judgment on this issue.

### C. *Compromise Settlement Agreement Effect on Debt Owed to Felder*

Hagee next argues that the CSA released the debt owed to Felder. The language of the release, however, extended only to claims "asserted or assertable in connection with the marriage of Felder and Hagee, the AID [Agreement Incident to Divorce], the Plan [of Exchange], and/or the 395 Acre Tract." Esperanza's obligation to repay Felder, however, arose independent of these agreements. Esperanza's obligation to repay Felder arose when Felder used his separate property funds to purchase the real property owned by Esperanza. Moreover, paragraph 4 of the CSA expressly recognized that "liens and encumbrances" existed against the property which had to be removed by Esperanza at closing. Finally, paragraph 4 of the CSA also recognized that the proceeds from the sale were to be distributed "pursuant to the limited partnership agreement of Esperanza," and section IV of the limited partnership agreement expressly contemplated Esperanza repaying Felder for the money used to acquire the real property owned by Esperanza before any distributions were made to Hagee and Felder as limited partners.[2] Accordingly, the trial court properly granted summary judgment on this issue.

### D. *Authority to Sell*

The final issue Hagee challenges with regard to the trial court's summary judgment rulings is its conclusion that Felder had the authority to sell Esperanza's only remaining asset over her objection. Hagee argues that the sale was a "major decision" which required her consent under

---

[2] If the sale is considered a liquidating event, repayment of Esperanza's debt to Felder before distributions are made to the limited partners would also be required under section 8.2 of the limited partnership agreement.

section 5.3 of the Limited Partnership Agreement. Hagee also argues that the sale was the sale of substantially all of the assets of Esperanza GP which required her consent as a shareholder.

With regard to Hagee's argument as a shareholder, Felder correctly counters that the sale of the 395 acre tract was the sale of an asset owned by Esperanza, not Esperanza GP. Hagee's consent as a shareholder under article eight of Esperanza GP's Articles of Incorporation was required only in relation to the sale of all, or substantially all, the property and assets of Esperanza GP. Since the 395 acre tract was not an asset of Esperanza GP, this provision is inapplicable.

With regard to Hagee's argument as a limited partner, assuming without deciding that Hagee's consent was required under Section 5.3(ii) of the limited partnership agreement because the sale of the property "would make it impossible to carry on the ordinary business of the Partnership," we agree with Felder that Hagee consented to the sale of the 395 acre tract by entering into the CSA. In fact, the sole purpose of the CSA was to set forth the terms for the sale of the 395 acre tract which was Esperanza's sole remaining asset. Hagee's sole recourse in complaining about the timing and terms of that sale was her breach of fiduciary duty claim because Felder did owe her a fiduciary duty to ensure that the timing and the terms of the sale were fair and equitable. Unfortunately for Hagee, however, the jury rejected that claim.

## JURY CHARGE

In her fourth issue, Hagee contends the trial court erred in instructing the jury that her consent to the sale of the 287 acre tract was not required and in stating that Felder owed her a fiduciary duty as a limited partner instead of as an individual. In her fifth issue, Hagee asserts the trial court erred in refusing to submit a question on one of her theories to support her breach of fiduciary duty claim.

*A.      Standard of Review and General Law*

In a jury charge, a trial court is required to "submit such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX. R. CIV. P. 277. "An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence." *Columbia Rio Grande Healthcare L.P. v. Hawley*, 284 S.W.3d 851, 855 (Tex. 2009). "Determining necessary and proper jury instructions is a matter within the trial court's discretion, and appellate review is for abuse of that discretion." *Id*. at 856.

A court should not comment directly on the weight of the evidence in the charge; however, "the court's charge shall not be objectionable on the ground that it incidentally constitutes a comment on the weight of the evidence … when it is properly a part of an instruction or definition." TEX. R. CIV. P. 277. "The goal of the charge is to submit to the jury the issues for decision logically, simply, clearly, fairly, correctly, and completely." *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 664 (Tex. 1999).

*B.      Instructions*

Hagee first asserts that the trial court erred in instructing the jury that Felder was authorized to sell the 287 acre tract without Hagee's consent. The jury was charged as follows with regard to Hagee's breach of fiduciary duty claim:

Did SCOTT FELDER comply with his fiduciary duty to LORI HAGEE?

Because Scott Felder was the sole director of Esperanza Properties GP, the general partner of Esperanza Properties, LP, he owed fiduciary duties to Lori Hagee as a limited partner.

To prove he complied with his duties, Scott Felder must show:

a.      the sale of the 287 acres to Craig and Penny Cannon was fair and equitable to LORI HAGEE; and

b.      SCOTT FELDER made reasonable use of the confidence that LORI HAGEE placed in him; and

- 7 -

c.        SCOTT FELDER acted in the utmost good faith and exercised the most scrupulous honesty toward LORI HAGEE; and

d.        SCOTT FELDER placed the interests of LORI HAGEE before his own, did not use the advantage of his position to gain any benefit for himself at the expense of LORI HAGEE, and did not place himself in any position where his self-interest might conflict with his obligations as a fiduciary; and

e.        SCOTT FELDER fully and fairly disclosed all important information to LORI HAGEE concerning the transactions.

You are instructed that SCOTT FELDER, as sole director of Esperanza Properties, GP, Inc. was authorized to sell the 287 Acre Tract without the consent of Lori Hagee.

Scott Felder is conclusively presumed to have acted in good faith if he acted in reliance upon the opinion of third-party consultants that Felder reasonably believed are within such professionals' competence.

For the reasons previously stated, we reject Hagee's contention that the instruction was legally incorrect because her consent was required. With regard to the instruction being an improper comment on the weight of the evidence, we disagree. Although the instruction may incidentally comment on the weight of the evidence, the jury needed to understand the legal principles guiding its answer to the question and understand that Felder was authorized to sell the property without Hagee's consent, especially given the manner in which the evidence was presented at trial. *See* TEX. R. CIV. P. 277. The instruction was as necessary in guiding the jury as the instructions on the actions Felder was required to take in order to comply with his fiduciary duty. Moreover, the instruction did not suggest the trial judge's opinion as to whether Felder breached his fiduciary duty or whether he complied with the five obligations set forth in the jury charge.

With regard to the charge informing the jury that Felder's duty was to Hagee "as a limited partner" as opposed to simply Hagee, Hagee asserts the Texas Pattern Jury Charge does not qualify the duty owed by the nature of the relationship between the parties. Although the Texas Pattern

Jury Charges are heavily relied upon by both the bench and bar, they are not "law." *H.E. Butt Grocery Co. v. Bilotto*, 928 S.W.3d 197, 199 (Tex. App.—San Antonio 1996), *aff'd*, 985 S.W.2d 22 (Tex. 1998). In this case, Felder would owe Hagee no fiduciary duty but for her status as a limited partner. *See Daniels v. Empty Eye, Inc.*, 368 S.W.3d 743, 750-51 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (recognizing fiduciary relationship between officer of corporate general partner and limited partnership); *see also Myer v. Cuevas*, 119 S.W.3d 830, 836 (Tex. App.—San Antonio 2003, no pet.) ("A fiduciary relationship is an extraordinary one that the law does not recognize lightly."). Accordingly, we hold the charge was not erroneous.

Hagee's fourth issue is overruled.

C.     *Question*

Hagee also contends that the trial court abused its discretion in refusing to submit her question with regard to whether Felder breached his fiduciary duty by failing to disclose to her his interpretation of the Compromise Settlement Agreement that no longer required Hagee's consent to sell the 287 acre tract.

Hagee cites no case law to support her contention that Felder had a duty to disclose his interpretation to her. Indeed, case law supports the opposite conclusion. *See Pride Int'l, Inc. v. Bragg*, 259 S.W.3d 839, 850 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (holding director had no duty to disclose personal opinion regarding contract's interpretation during negotiations). "To the contrary, a person who signs a contract must be held to have known what words were used in the contract and to have known their meaning, and he must be held to have known and fully comprehended the legal effect of the contract." *Tamez v. Southwestern Motor Transport, Inc.*, 155 S.W.3d 564, 570 (Tex. App.—San Antonio 2004, no pet.); *see also Centella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996) (referring to "legal presumption that a party who signs a contract knows of its contents"). Moreover, even when a court construes a contract to determine the intent

of the parties, it is the objective intent that controls; the court does not consider the parties' personal interpretations or subjective intent. *Neel v. Tenet HealthSys. Hosps. Dallas, Inc.*, 378 S.W.3d 597, 605 (Tex. App.—Dallas 2012, pet. denied); *Weaver v. Highlands Ins. Co.*, 4 S.W.3d 826, 831 (Tex. App.—Houston [1st Dist.] 1999, no pet.). Therefore, Felder had no fiduciary obligation to disclose his interpretation of the contract to Hagee, and the trial court did not err in denying Hagee's request for a question premised on such an obligation.

Hagee's fifth issue is overruled.

### TRESPASS

The evidence at trial established that Serengeti fenced a section of the 287 acre tract for use in its business. The jury found Serengeti liable for trespass and awarded Esperanza $22,100 in damages. Hagee and Serengeti contend the evidence is insufficient to support the jury's award of damages.

"In the case of a temporary injury to real estate, the measure of damages is ordinarily the cost and expense of restoring the land to its former condition, plus the loss or damages occasioned by being deprived of the use of same, with interest." *Vaughn v. Drennon*, 372 S.W.3d 726, 738 (Tex. App.—Tyler 2012, no pet.); *see also Meridien Hotels, Inc. v. LHO Fin. P'ship I, L.P.*, 255 S.W.2d 807, 821 (Tex. App.—Dallas 2008, no pet.). Felder and Esperanza concede that the record contains no evidence to support the damage award, but appear to believe Esperanza is entitled to a remand for a new trial on this claim. Because Hagee and Serengeti raised this issue in a motion for judgment notwithstanding the verdict and they assert a no evidence challenge on appeal, they are entitled to a rendition of the judgment, rather than a remand of the cause. *See E-Z Mart Stores, Inc. v. Ronald Holland's A-Plus Transmission & Auto., Inc.*, 358 S.W.3d 665, 670 (Tex. App.—San Antonio 2011, pet. denied); *but see Graves v. Tomlinson*, 329 S.W.3d 128, 141 n.2 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (noting party entitled to remand rather than

rendition if legal sufficiency issue preserved only by motion for new trial). Accordingly, because there is no evidence to support the jury's damage award, the trial court's judgment regarding the trespass claim is reversed, and judgment is rendered that Esperanza take nothing as to the trespass claim.

### BREACH OF CONTRACT BY HAGEE

In her seventh issue, Hagee challenges the jury's finding that she breached the Compromise Settlement Agreement.[3] In reviewing the sufficiency of the evidence, "[w]e review the evidence presented at trial in the light most favorable to the jury's verdict, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007).

Hagee first asserts that the jury's liability finding must be reversed if this court determines Hagee's consent was required for the sale or Felder did not have the authority to sell the property. Because we have held that Hagee's consent was not required and Felder had the authority to sell the property, we overrule this assertion.

Hagee next asserts that the evidence conclusively established that she did not breach the Compromise Settlement Agreement by failing to "simultaneously" close on the sale of the 108 acre tract because she did not know about the rescheduled closing date, making the "simultaneous" closing impossible. The record, however, establishes that Esperanza and Felder extended the deadline for Hagee's purchase, and the reason she did not purchase the 108 acres was her inability to pay the purchase price. Hagee anticipated having sufficient funds to pay the purchase price from her portion of the proceeds of the sale of the 287 acres; however, those funds were not

---

[3] Although the jury found Hagee breached the CSA, the jury awarded $0 in damages. This is likely based on the evidence that another purchaser stood ready to purchase the 108 acres at the same price Hagee was required to pay under the agreement.

sufficient. Because the evidence is sufficient to support the jury's finding that Hagee breached the CSA, her seventh issue is overruled.

## ATTORNEYS' FEES

In her final issue, Hagee challenges the trial court's award of attorneys' fees to Felder and Esperanza. First, Hagee contends that the attorneys' fees were not recoverable under the Texas Declaratory Judgments Act. Second, Hagee contends Felder and Esperanza failed to segregate their fees.

### A. Recovery under the Texas Declaratory Judgments Act

In this case, all parties sought declaratory relief with regard to the construction and interpretation of the various agreements. Section 37.009 allows a trial court to award attorneys' fees in any declaratory judgment proceeding. TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2008). Hagee contends that the declaratory relief was sought simply to recover fees that would not otherwise be recoverable in relation to the other claims that were asserted. In this case, however, the declaratory relief was not sought simply for that purpose. Instead, the interpretation of the release language in the CSA was a crucial component of the claims asserted by both parties, and the declaratory relief narrowed the issues for trial.

### B. Segregation

"[I]f any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable fees from unrecoverable fees." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006). "Intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id*. at 313-14. Even where fraud, contract, and DTPA claims are all "dependent on the same facts or circumstances," "that does not mean they all required the same research, discovery, proof, or legal expertise." *Id*. at 313. However,

"[t]his standard does not require more precise proof for attorney's fees than for any other claims or expenses." *Id*. at 314. Attorneys are not required to keep separate time records when they draft a petition containing both a contract claim for which fees are recoverable and a fraud claim for which fees are unrecoverable; "an opinion [will] suffice stating that, for example, 95 percent of their drafting time would have been necessary even if there had been no fraud claim." *Id*.

In this case, the pre-trial summary judgments resolved the declaratory judgment claims, while the jury charge primarily focused on the tort claims, including the trespass and breach of fiduciary duty claims. Accordingly, we agree that the attorneys' fees were required to be segregated. Although Esperanza and Felder seek to rely on the trial court's reduction of the fees the jury found to be reasonable as evidence of segregation, segregation must be supported by evidence, and the record contains no evidence of such segregation. In fact, the attorney for Esperanza testified that he had not made any attempt to segregate his fees. Because Esperanza and Felder were required to segregate their recoverable attorney's fees from the unrecoverable fees and the record contains no evidence to support the required segregation, we reverse the portion of the trial court's judgment awarding attorney's fees and remand the cause for further proceedings on the attorney's fees claim. *See id*.

### CONCLUSION

The portion of the trial court court's judgment awarding Esperanza damages on its trespass claim is reversed, and judgment is rendered that Esperanza take nothing on that claim. The portion of the trial court's judgment awarding Felder and Esperanza attorney's fees is reversed, and the cause is remanded to the trial court for further proceedings on the claim for attorney's fees. The remainder of the trial court's judgment is affirmed.

Catherine Stone, Chief Justice